**PROPERTY MANAGEMENT &
INVESTMENTS, INC.,
Plaintiff-Appellant,**

v.

**Gerald A. LEWIS, et al.,
Defendants-Appellees.**

**No. 84–3142.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1985.

Jawdet I. Rubaii, Clearwater, Fla., for plaintiff-appellant.

R. Michael Underwood, Albert T. Gimbel, Asst. Attys. Gen., Tallahassee, Fla., for defendant-appellee Gerald Lewis.

Thomas R. Spencer, Jr., Coral Gables, Fla., for defendant-appellee Spencer, Sr.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

This is an appeal of an order dismissing a complaint as to one defendant and granting summary judgment to the remaining defendants in a civil rights action brought under 42 U.S.C. § 1983. Three issues are raised: (1) whether the trial court properly dismissed claims against a state court receiver on the basis of judicial immunity; (2) whether the district court acted properly by converting a 12(b)(6) motion to dismiss into a motion for summary judgment and granting that judgment; and (3) whether defamation is actionable under 42 U.S.C. § 1983. We find it necessary to decide only the first two issues, and determine that the trial court acted properly in both instances. We thus affirm the district court's order.

## I. FACTS

Appellant Property Management and Investment, Inc., ("PMI") was a Florida corporation involved in a novel real estate financing business.[1] According to PMI, the Comptroller's Office of the State of Florida originally had indicated that Florida securities laws did not apply to PMI's financial activities, and thus PMI did not make various disclosures required by those laws. Following the election of appellee Gerald Lewis as the new state Comptroller, the Comptroller's Office changed its position, determining that PMI's financing transactions were covered by the securities laws and that disclosures were required. The Comptroller's Office filed suit in a Florida state court against PMI, alleging violations of the Florida securities laws, and seeking an injunction and the appointment of a receiver to restrain PMI from violating the securities laws. That suit was concluded by the entry of a court order that incorporated a stipulation agreement signed by the Comptroller's Office, PMI, and PMI's president and sole stockholder, Louis Rolontz.

The court order prevented PMI from selling securities without complying with state securities laws. Further, PMI was placed in receivership with appellee Thomas Spencer named as the receiver. In the stipulation, PMI and Rolontz agreed to "waive" and "release" Comptroller Lewis and the agents and employees of the Comptroller's Office "from any causes of action they may have for libel, slander, intentional tortious interference with advantageous contractual relationships and the like, arising out of the filing of the complaint herein," and "from any causes of action or claims for damages they may have arising out of the application for and granting of a Temporary Restraining Order without notice granted therein." Record at 281. The stipulation document also indicated that it was the final adjudication of the rights between PMI and the Comptroller's Office

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. PMI purchased, managed, and sold residential real estate in central and southern Florida, primarily single family homes and condominium apartments. PMI sought to purchase property below its appraised value. It financed these purchases by assuming existing mortgages, negotiating with banks for mortgages, and providing mortgages and promissory notes to individual lenders.

"with prejudice as to any future civil actions." *Id.* at 282.

Shortly after the state court proceedings, PMI filed for bankruptcy, and also filed this section 1983 action in the United States District Court for the Middle District of Florida. PMI sued the state court receiver, appellee Spencer, the Florida Comptroller, appellee Lewis, and appellees Michael Gross, Mark Ives, and Michael Wynn, all employees of the Florida Comptroller's Office. It claimed that each of the appellees had violated PMI's federal constitutional rights under color of state law. Specifically, PMI alleged that receiver Spencer had released defamatory news reports to the press and embezzled PMI's assets, and that Comptroller Lewis and the other employees of the Comptroller's Office had used their power to destroy PMI in order to benefit the Florida banking industry and enhance their political fortunes.

Appellees Lewis, Gross, Wynn and Ives filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), contending that appellant was prevented from bringing this suit by virtue of the stipulation signed at the conclusion of the state court proceedings and incorporated into the state court's order. Appellees' motion did not request alternative treatment under Fed.R.Civ.P. 56, which governs motions for summary judgment. They did append a copy, evidently uncertified and incomplete, of the state court order and the stipulation.

In its response to appellees' motion, PMI indicated that appellees had omitted a one-page addendum to the stipulation. PMI submitted a copy of the stipulation and the addendum, which provided that "[i]n the event that [Comptroller Lewis] shall elect to refile a Complaint based upon the transactions alleged in the Complaint filed ... [in the state court]," PMI and Louis Rolontz "shall have all defenses, including [the waived] causes of action ... available to them in defending the subsequent action filed by [Lewis]." Record at 284. PMI claimed that Comptroller Lewis had procured the filing of a criminal indictment against Louis Rolontz and that the charges

therein were based on the same transactions alleged in the prior state court civil action. PMI maintained that this amounted to a breach of the stipulation agreement, and that the agreement thus became "absolutely voidable". *Id.* at 270. PMI also suggested that the stipulation agreement was not enforceable because it was induced by fraud and lacked consideration.

At this point in the proceedings, appellee Spencer filed a 12(b)(6) motion to dismiss the complaint, asserting, *inter alia,* absolute immunity as a state court receiver to the action under 42 U.S.C. § 1983. The district court then entered an order constituting final disposition of this litigation. The court converted the motion to dismiss filed by appellees Lewis, Gross, Wynn and Ives to one for summary judgment under Fed.R.Civ.P. 56, and granted summary judgment on the ground that the state court order incorporating the stipulation between PMI and the state officials barred the instant suit under res judicata principles. The complaint against appellee Spencer was dismissed on the ground that a state court receiver is, as a matter of law, immune from the civil rights allegations contained therein. PMI appeals all of these rulings.

## II. RULING DISMISSING CLAIM AGAINST STATE COURT RECEIVER

■ Appellant concedes that court-appointed receivers, such as appellee Spencer, enjoy judicial immunity for acts within the scope of their authority, and that their authority extends to carrying out faithfully and carefully the orders of the appointing judge. *T & W Investment Co. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978); *Kermit Construction Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir. 1976). Appellant contends, however, that the district court erred in determining that the activities alleged in the complaint were within the scope of the authority granted to Spencer. We reject appellant's contention.

In the complaint, appellant alleged that the receiver caused injury to and destruction of its business property by "maliciously and deliberately releas[ing] news reports to the media ... that were false and defamatory" as to appellant, and by "aid[ing] and abett[ing] ... in [the] ... conversion and/or embezzlement of [PMI's] corporate assets." Record at 186, 189. Appellant provided examples of the alleged defamatory reports released to the media. These examples indicate that the reports concerned the financial activities of PMI that had led to the state court lawsuit and the establishment of the receivership.[2] In regard to the conversion and embezzlement allegations, appellant listed certain actions taken by Spencer, all of which involved decisions made by Spencer in the course of administering the receivership.[3] Assuming these allegations to be true *Boddie v. Connecticut*, 401 U.S. 371, 373, 91 S.Ct. 780, 783, 28 L.Ed.2d 113 (1971), we do not find them to indicate that Spencer engaged in activities *prima facie* beyond the scope of the official function of a state court receiver. Further, appellant does not expressly allege in the complaint that Spencer was not acting pursuant to the orders of the appointing judge.

Since nothing in the complaint indicated that Spencer had acted outside his authority and thus was not immune from suit, the

---

2. Appellant listed the following examples in its complaint:

1. "The State's Comptroller's office says that more than 350 Tampa Bay area investors have lost at least $6,000,000 in a property investment scheme .... When we attempted to ask questions today, they closed the doors on us .... They have charged ... and Leonard Levin who head the company ...."

2. "'It was an intolerable risk situation,' Michael A. Gross, director of the division of securities for the state banking department, said of PMI's operation ....

Both Levin and Rolontz have been involved in firms in bankruptcy and foreclosure actions, the comptroller's office charged, contending these material facts might have influenced the judgment of original investors about the two men's ability to operate Property Management and Investments Inc., had they known...."

3. "Had the firm first sought to register and sell securities under such a plan, it would have been denied permission, he said."

4. "PMI has a $512,000 cash account with Paine and Webber but did not tell investors it was buying stocks with their money."

5. "Rolontz and Levin created Bedford Realty Corporation about the same time they set up Property Management and Investments. Bedford then paid $74,031.74 in real estate commissions...."

6. "Levin remains as a consultant to Bedford Realty and as such, 'all of the acts, deeds and conduct of Levin are the acts, deeds and conduct of PMI,' the comptroller charged."

7. ".... (PMI) ... and a former director, Leonard Levin ..."

8. "An assistant to Lewis, Mark Ives, said the firm's assets consist of $1 million in cash and $4 million in property. He said they were frozen in an unusual action 'to ensure the peace of mind' of investors."

9. "THOMAS SPENCER, a Miami real estate broker and appraiser with a 'proven tract record,' was appointed to manage the company's assets and made a recommendation to Phillips about how they should be used now ...."

10. "The suit also charges that Levin has been involved with two companies—one of them General Energy Devices Inc., a Florida company—that have gone bankrupt (sic). Rolontz was involved with those two and a third company—United American Energy Inc., another Florida company—that has a mortgage foreclosure action against it."

11. "GROSS CONCEDED that investors might never have lost their investments. 'But the issue is not whether it would have worked if they were lucky but whether they violated the legislative requirement of certain built-in protection for investors,' he said ..."

12. "'When we close down a company that is already defunct, people ask us, "Why did you wait until now?" Well, this is what we're trying to do this time, and people are asking us why we're stopping them,' Gross said." Record at 187–88.

3. Appellant listed the following actions as examples of conversion and embezzlement on the part of the receiver: failing to file sworn accountings; filing "deliberately false and misleading financial statements portraying the Plaintiff as being hopelessly insolvent by means of utilizing only the cost basis, as opposed to the fair market value, of the real property involved"; instructing the accountant previously used by PMI to delete from his financial analysis the fair market value of the real properties; paying an excessive salary to a former employee of PMI as a secretary and bookkeeper for the receivership; redeeming a mortgage held by the same employee outside of the receivership, not due for another year, while denying all other creditors this same preference. *Id.* at 189–90.

district court acted properly when it granted Spencer's 12(b)(6) motion to dismiss on grounds of immunity. *See Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966); *Carmack v. Gibson,* 363 F.2d 862, 864 (5th Cir.1966). As we are able to uphold the district court's ruling on this basis, we need not address appellee Spencer's claim that the district court's ruling dismissing the complaint be upheld on the ground that defamation is not actionable under section 1983.

## III. RULING GRANTING SUMMARY JUDGMENT TO THE FLORIDA COMPTROLLER AND COMPTROLLER'S OFFICE EMPLOYEES

Appellant claims that the granting of summary judgment was improper for three reasons. First, it was improper to convert the appellees' 12(b)(6) motion to dismiss into a motion for summary judgment. Second, even if the conversion were proper, the district court failed to comply with the due process requirements of notice and hearing. Third, even if the conversion were appropriate and due process satisfied, summary judgment would be erroneous as a matter of law because there were genuine issues as to material facts.

*A. The Propriety of the Conversion.*

■ Under Fed.R.Civ.P. 12(b),

[i]f on a [12(b)(6)] motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion. *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413, 415 (5th Cir.1980).

However, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Murray v. Gelderman,* 566 F.2d 1307, 1308 (5th Cir.1978).

The gist of appellant's argument is that in this instance the district court erred by considering the state court order and the stipulation, and so converting appellees' 12(b)(6) motion into one for summary judgment. While conceding that the district court generally has discretion as to whether to consider outside materials on a 12(b)(6) motion, appellant argues that the court may not consider such materials, and thereby convert the motion to one for summary judgment under Rule 56, if those materials fail to meet certain evidentiary standards imposed by Fed.R.Civ.P. 56. Appellant maintains that the outside materials that appellees submitted failed to meet these standards because they were incomplete and not authenticated.

■ Even assuming that the Rule 56 evidentiary requirements of completeness and authenticity apply here,[4] appellant's argument fails for two reasons. First, we find that the appellant is estopped from denying the propriety of the conversion because it submitted its own copy of the stipulation to the court and, thus, affirmatively sought to effect the conversion about which it now complains. A review of the record indicates that appellant's only objections to the consideration of the stipulation submitted by appellees were that the stipulation was incomplete and not authenticated. However, appellant itself cured both these defects by submitting a complete and, we must assume, authenticated version of the stipulation, which the court considered along with the stipulation submitted by the appellees.[5] By submitting this document, the appellant rendered its

4. As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2721 (1983). We, thus, assume for present purposes that authen-

ticity and completeness are among the evidentiary requirements of Rule 56.

5. The district court stated that it "examin[ed] material[s] ... submitted by both parties." Record at 316.

objections to consideration of the stipulation in effect meaningless, and, indeed, sought such consideration.

Second, all of the materials before the trial court were authenticated. Appellant appears to have admitted the authenticity of the stipulation submitted by the appellees. In its memoranda opposing the appellees' motion to dismiss, PMI stated, "the Plaintiff concedes that the document submitted [by the appellees] appears to be an accurate, albeit minaturized, copy of the original agreement signed by Louis C. Rolontz." Record at 269.[6] Further, appellant itself submitted a complete copy of the stipulation to the court, and we assume that appellant concedes the authenticity of that document. We also note that at no time, either before the district court or this court, has appellant ever contended that the materials considered by the district court were in fact not genuine.

We, therefore, hold that the district court could properly consider the court order and the stipulation, and that the conversion of the 12(b)(6) motion into a Rule 56 motion for summary judgment was proper.

### B. *Due Process Requirements of Notice and Hearing.*

Appellant argues that even if the conversion were proper, the trial court erred by failing to provide adequate notice of the conversion. We find this claim to be meritorious.

It is clearly the law in this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge *must* give to all parties ten-days notice that he is so converting the motion. *Herron v. Beck,* 693 F.2d 125, 126 (11th Cir.1982); *Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979). The purpose of this requirement is to make certain that the parties are aware of the conversion and have an opportunity to present documents and arguments for and against the granting of summary judgment. In this case, the court did not give notice. This was error.

For such error, we ordinarily would remand a case for further proceedings consistent with the notice requirement. *E.g., Herron,* 693 F.2d at 127; *Underwood,* 604 F.2d at 370. We do not do so in this very unique case only because a careful review of the record persuades us that all of the parties were well aware that the judge was converting this 12(b)(6) motion and that the parties made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled.

Appellant has claimed at all times that there are three reasons why its civil rights action is not barred by the state court order incorporating the stipulation: (1) the stipulation agreement is voidable since the appellees breached the terms of the stipulation by procuring the filing of a criminal indictment against Louis Rolontz; (2) the stipulation agreement is not enforceable because it lacks consideration; and (3) the release is voidable because induced by fraud. Appellant presented all three arguments fully before the district court.[7] PMI presented exhibits to support the arguments, submitting a copy of the stipulation

---

6. We also note that counsel for appellant conceded at oral argument that "from what [he] could tell" there was no question as to the genuineness of the stipulation. He further stated that he believed that the stipulation submitted by appellees was an authentic document.

7. Appellant concedes that it presented these arguments to the district court, stating in its brief that

> [i]n Appellant's Opposition to State Defendants' Motion to Dismiss, it was set forth that Appellant's position was that the active procurement by Appellees of a criminal informa-

tion abrogated any agreement that might have existed between the parties.... Also asserted was a failure of consideration.... Appellant's contentions, although perhaps inartfully drafted, were premised on: (1) the existence of a latent ambiguity in the addendum as to the meaning of the words "filed," "defenses," "causes of action," and "available to them in defending;" (2) a contemporaneous oral agreement that induced the execution of the documents; and/or (3) fraud in the inducement.

Brief for Appellant at 23.

and an addendum to it, and also a copy of the criminal indictment filed against Louis Rolontz. Further, appellant set forth its arguments in a memorandum submitted to the court, stating,

A substantial portion of the Motion submitted by the State Defendants is devoted to depicting PMI to this Court as having filed a frivolous Complaint owing to the existence of a 'release' purporting to remove liability from the State Defendants. In support of their position, an unauthenticated copy of a six page document is appended to the memorandum. Without any attempt to inform this Court of the existence of a seventh and most crucial page, or the subsequent facts that drastically alter any conclusion that might be drawn from what they have presented, the State Defendants have requested this Court to issue sanctions....

The Plaintiff concedes that the document submitted appears to be an accurate, albeit minaturized, copy of the original agreement signed by Louis C. Rolontz. However, on February 5, 1981, an Addendum To Stipulation was executed by the identical signatorees [sic] to the original document. In pertinent part, it provides:

In the event that Plaintiff shall elect to refile a Complaint based upon the transactions alleged in the Complaint filed herein, the Defendants, which are parties to this stipulation, shall have all defenses, *including causes of action that are described in paragraph 10 of this Stipulation,* available to them in defending the subsequent action filed by the Plaintiff.

The State Defendants are well aware that the purpose of this addendum was to reassure PMI and Louis Rolontz that no further legal action, civil or criminal, was to follow the conclusion of Civil Action No. 80–14048–16. A close examination of the stipulation, without the addendum, clearly exhibits the lack of any consideration for the agreement by the State Defendants. On the other hand, they achieved substantial benefit Copies of the Stipulation and Addendum are attached as Exhibits "A," and "B."

Subsequently, the State Defendants procured the filing of an information against Louis Rolontz on June 5, 1981 charging him criminally with activity arising from the same transactions as the civil action. A copy is attached as Exhibit "C." On July 28, 1981, a Judgment of Guilt was rendered in the Circuit Court for Pinellas County. This conduct deliberately abrogated the agreement between the parties and, consequently, the release became absolutely voidable.

Record at 268–70.

It is clear from the record that the appellant knew of the conversion, and even sought to effect it by itself submitting materials outside the pleadings. It is also clear that PMI introduced all the documents that it wanted the judge to consider outside the record and made all the arguments that it intended to make.[8] Further, the judge fully considered all the documents and arguments presented by appellant, entering summary judgment only "after examining material outside the pleadings, which was submitted by both parties." *Id.* at 316. We do not intend to deviate from the long-standing rule in this circuit that notice *must* be given and that failure to do so will result in reversal and a remand. We determine only that in the very unique circumstances presented by

---

8. We note that in both its brief to this court and its motion for reconsideration filed with the district court, appellant points out that affidavits from Louis Rolontz and other PMI officers were not submitted to the district court. It also notes that a motion to compel attendance at deposition of appellee Lewis was pending in the district court at the time the court entered summary judgment. *Id.* at 17; Record at 327.

However, appellant makes these observations to show that the district court "was on notice that ... [PMI] had not presented all of the material available." *Id.* At no time, either before this court or the district court, has appellant affirmatively stated that it would have presented any other documents or arguments, or done anything differently, had it been given formal notice of the conversion.

this case, we will not remand for further proceedings.

### C. *Propriety of Granting Summary Judgment.*

■ Appellant's final claim is that it was error to grant summary judgment on the record before the district court judge because there existed genuine issues as to material facts. Viewing the record in the light most favorable to appellant's position, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969), we do not find any genuine issues of material fact to exist.

No question of fact exists regarding appellant's argument that the filing of the criminal indictment breached the stipulation agreement, making it voidable. As the district court found, read together the stipulation and addendum are not ambiguous and clearly provide that PMI waived its claims against the appellees except for use as *defenses* in any further suit by the Comptroller's office. Thus, the district court certainly could have found as a matter of law that even if appellees, all employees of the Comptroller's Office which has purely civil powers, had somehow procured the filing of a criminal indictment against Rolontz, the stipulation agreement would still bar appellant's present action. Similarly, no factual questions were presented in regard to appellant's arguments based on lack of consideration and fraud in the inducement. We thus find that the district court properly granted summary judgment.

For the foregoing reasons, we

AFFIRM.