**Albert JONES,**
**Plaintiff–Counter–Defendant–Appellant,**

v.

**The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant–Counter–Claimant–Appellee.**

Nos. 89–8464, 89–8921.

United States Court of Appeals, Eleventh Circuit.

Sept. 4, 1990.

Rehearing and Rehearing En Banc Denied Nov. 5, 1990.

David E. Tuszynski, Atlanta, Ga., for plaintiff, counter-defendant, appellant.

William Lewis Spearman, Douglas W. Smith, Webb, Carlock, Copeland, Semler & Stair, Atlanta, Ga., and W. Ray Persons, Arrington & Hollowell, Atlanta, Ga., for defendant, counter-claimant, appellee.

Before EDMONDSON and BIRCH, Circuit Judges, and RE *, Chief Judge.

BIRCH, Circuit Judge:

In this diversity case involving the interpretation of the Georgia Motor Vehicle Accident Reparations Act, O.C.G.A. § 33–34–1 *et seq.* (the Georgia No–Fault Act), plaintiff Albert Jones (Jones) appeals three separate orders by the United States District Court for the Northern District of Georgia. The first order granted defendant, The Automobile Insurance Company's (Insurance Company) motion in limine to exclude evidence concerning Insurance Company's relationship with other of its insureds not involved in this action, and agreed with Insurance Company's interpretation of O.C.G.A. § 33–34–4(a)(2)(B) as a ceiling on recoverable insurance benefits. 698 F.Supp. 226. The second order granted Insurance Company's motions to deposit $700 with the court to settle the case and to dismiss the action in accordance with Federal Rule of Civil Procedure 12(b)(6). 725 F.Supp. 528. The third order denied Jones' request for relief from the second order pursuant to Federal Rule of Civil Procedure 60(b).

In its first order, the trial court properly interpreted O.C.G.A. § 33–34–4(a)(2)(B) and properly excluded the evidence of other insureds of Insurance Company. In granting Insurance Company's motion to dismiss, the district court considered matters outside of the pleadings, thereby converting the motion to dismiss into a motion for summary judgment, complete with all of the requirements of Federal Rule of Civil Procedure 56. Because the district court did not comply with the ten-day notice requirement of Federal Rule of Civil Procedure 56(c), we reverse the grant of summa-

---

* Honorable Edward D. Re, Chief Judge of the U.S. Court of International Trade, sitting by designation.

ry judgment and the denial of the Rule 60(b) motion, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

On April 24, 1986, Jones was stopped at a red light in his pick-up truck when it was struck from behind by another automobile. Jones was injured in the collision. At the time of the accident, Jones had a personal injury protection (PIP) insurance policy issued by Insurance Company. This insurance policy provided for basic "no fault" insurance benefits, consisting of a maximum of $2,500 in medical expense benefits and an aggregate maximum of $5,000 in benefits.

After his accident, Jones filed a claim with Insurance Company for payment of medical expenses and for payment of loss of earnings benefits. Insurance Company reimbursed Jones the $1,704 he had paid in medical expenses. This action concerns the amount of loss of earnings benefits to which Jones is entitled under his PIP policy.

Jones claims that as a result of his accident he was unable to work between April 25, 1986 and July 29, 1986. According to Jones' interpretation of his PIP policy and of O.C.G.A. § 33–34–4(a)(2)(B), Insurance Company must pay him 85% of the wages lost during his period of disability, at a rate of $200 per week, such payments to stop only when Jones has recovered 85% of his lost wages or when the $5,000 limitation on aggregate benefits has been reached. Insurance Company paid Jones $200 per week from April 25, 1986 until July 4, 1986, when Insurance Company claims Jones was able to return to work. Insurance Company disagrees with Jones' interpretation of O.C.G.A. § 33–34–4(a)(2)(B), contending that the statute requires Insurance Company to pay an insured loss of earnings benefits only during the insured's period of disability. Jones is also seeking statutory penalties and punitive damages from Insurance Company for its alleged bad faith in failing to pay Jones' claim for lost wages within the time provided by O.C.G.A. §§ 33–34–6(b) and 33–34–6(c).

## II. PROCEDURAL BACKGROUND

On November 25, 1987, Jones began this suit against Insurance Company in the state courts of Georgia. His complaint set forth claims for insurance benefits, statutory penalties and punitive damages under the Georgia No–Fault Act. Insurance Company removed this suit to the United States District Court for the Northern District of Georgia and responded to Jones' claims. Pre-trial proceedings began.

Insurance Company filed three motions on July 12, 1988. The first was a motion in limine in which Insurance Company sought an order prohibiting Jones from tendering any evidence concerning Insurance Company's relationship with other of its insureds not involved in this action. The second motion, styled "Motion in Limine, or in the Alternative for Summary Judgment," requested that the court construe O.C.G.A. § 33–34–4(a)(2)(B) as limiting the payment of loss of earnings benefits to the term of disability, and to the lesser of $200 per week or 85% of lost wages. Insurance Company's third motion, also entitled "Motion in Limine, or, in the Alternative for Summary Judgment," requested that the court find unconstitutional O.C.G.A. § 33–34–6(c), the section of the Georgia No–Fault Act pursuant to which Jones seeks punitive damages. On July 18, 1988 the district court mailed to Jones a "Notice to Respond to Summary Judgment Motion" pursuant to an April 14, 1987 "standing order" of the district court, thereby complying with the notice requirement of Rule 56 of the Federal Rules of Civil Procedure (Rule 56). Jones filed his response to Insurance Company's motions in limine and for summary judgment on July 29, 1988. In an order dated November 2, 1988, the district court ruled on Insurance Company's three motions.

The order granted Insurance Company's first motion in limine to exclude evidence of transactions between Insurance Company and others insured by Insurance Company who are not involved in this action. The district court also granted Insurance Company's second motion, its "Motion in Li-

mine, or, in the Alternative for Summary Judgment", finding that O.C.G.A. § 33–34–4(a)(2)(B) requires the insurer to pay injured insureds the lesser of $200 per week or 85% of their lost wages, only throughout the period of their disability or until the $5,000 aggregate benefits maximum is reached. The district court also found O.C.G.A. § 33–34–6(c) to be constitutional, thereby denying Insurance Company's third motion.[1]

On November 15, 1988, the district judge met with counsel for Jones and Insurance Company. The judge suggested that after the court's November 2, 1988 order, no issues remained to be resolved. Insurance Company expressed its willingness to pay Jones $700 ($200 per week for the three and one-half weeks of disputed disability) to conclude the action. At the end of the conference, Insurance Company was to file a motion to pay $700 into the registry of the court and to dismiss Jones' complaint. That motion was filed on February 2, 1989. Attached to that motion, entitled "Motion to Deposit Money with Court, to Dismiss Complaint and for Other Relief," was an affidavit in support of the motion. On February 21, 1989, Jones filed a response to Insurance Company's motion to dismiss, claiming that the district court's November 2, 1988 order did not dispose of all of the issues in the case. There still existed, claimed Jones, the issue of whether Insurance Company had acted in good faith in failing to pay Jones in the timely manner required by the Georgia No–Fault Act. The resolution of this issue would determine whether Jones was entitled to statutory penalties and/or punitive damages. In two separate orders, dated May 30, 1989 and June 5, 1989, the district court granted Insurance Company's motion to dismiss and to deposit money with the court. Judgment was entered for Jones in the amount of $700 on June 7, 1989. On June 12, 1989, Jones appealed from the district court's order dismissing the case.

On August 30, 1989, Jones filed with the district court a "Motion for Relief from Order and Judgment" pursuant to Federal Rule of Civil Procedure 60(b) (Rule 60(b)). This Rule 60(b) motion was based on documents Jones received from Insurance Company in late July, 1989. In his motion for relief, Jones claimed that these documents constituted newly discovered evidence which could not reasonably have been discovered earlier. Jones also claimed that the district court converted Insurance Company's February 2, 1989 motion to dismiss into a motion for summary judgment without affording Jones the notice and opportunity to be heard required by Rule 56. On September 14, 1989, Insurance Company filed an "Opposition to Jones' Motion for Relief from Order and Judgment." On September 20, 1989, we granted Jones' motion for stay pending the district court's determination of Jones' Rule 60(b) motion. The district court denied Jones' Rule 60(b) motion on October 30, 1989, indicating that Jones' newly discovered evidence would not affect its prior order and judgment. Jones appealed from the district court's denial of his Rule 60(b) motion on November 3, 1989. This latter appeal was consolidated with Jones' appeal of the district court's May 30 and June 5, 1989 orders for review by this court.

## III. DISCUSSION

### 1. *Notice Requirement.*

Federal Rule of Civil Procedure 12(b) (Rule 12(b)) provides:

> If on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

It is within the judge's discretion to decide whether to consider matters outside of the

---

**1.** Because Insurance Company has not appealed this holding, the constitutionality of O.C.G.A. § 33–34–6(c) is not at issue in this case.

pleadings that are presented to the court. *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). However, if the judge does consider these outside matters, i.e., if the judge does not exclude them, Rule 12(b) requires the judge to comply with the requirements of Rule 56. *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569, 572 (1972), *vacated on other grounds, sub nom. Samkowski v. Carter*, 416 U.S. 918, 94 S.Ct. 1916, 40 L.Ed.2d 276 (1974). Rule 56 states, in relevant part, that a "motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing." Thus, the court must give the parties ten days notice that it is converting the moving party's motion to dismiss into a motion for summary judgment. *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (and cases discussed therein).[2] Once the notice required by Rules 12(b) and 56 has been given, the court properly may consider the converted motion for summary judgment and any materials in support of or in opposition to the motion as of a certain day. *Id.*

 The notice and hearing requirements of Rule 56 are applicable to this case under the Rule 12(b) mandate. On February 2, 1990, Insurance Company filed with the court a motion to dismiss, attached to which was an affidavit in support of the motion.[3] This attached material constituted "matters outside the pleading." Because it was never excluded by the court from its consideration, Insurance Company's motion to dismiss was converted into a motion for summary judgment under Rule 12(b). However, the district court failed to give Jones *express notice*, in accordance with Rules 12(b) and 56, of its intent to convert Insurance Company's motion into one for summary judgment.

 This circuit has *consistently* enforced the strict notice requirements of Rules 12(b) and 56, creating a bright-line rule: If a district court fails to comply with the ten-day notice requirement, the case will be reversed and remanded so that the district court may provide the non-moving party with adequate notice.[4] *See Marine Coatings*, 792 F.2d at 1568 ("The cases from this circuit are clear that before a motion to dismiss may be converted to one for summary judgment the court must first communicate its intention to the parties to so treat the motion and then allow the parties ten days to submit any relevant evidence and argument in support or opposition to the merits."); *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir.1987) (en banc) ("'It is clearly the law in this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge *must* give all parties ten-days notice that he is so converting the motion.' Failure to give such notice 'will result in reversal and remand.'" (emphasis in original) (citations omitted) (quoting *Property Management & Investments, Inc.*, 752 F.2d at 606)); *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.1985) ("[W]e have held repeatedly that this requirement of notice will be deemed *strictissimi juris* and applies to *all* parties litigant." (emphasis in original)); *Milburn v. United States*, 734 F.2d 762, 766 (11th Cir.1984) ("[T]his court has established a 'bright-line' test requiring 10–day advance notice that the court will take a motion for summary judgment under advisement as of a certain date."); *Moore v. State of Florida*, 703 F.2d 516, 520 (11th Cir.1983) (The

---

**2.** *Griffith* involved a situation where the non-moving party was proceeding *pro se*. In those situations this court has specified the *form* that the express, ten days advance notice should take. *Id.* at 825.

**3.** This motion filed by Insurance Company on February 2, 1990 was entitled "Defendant's Motion to Deposit Money with Court, to Dismiss Complaint, and for Other Relief." Both of Insurance Company's motions filed on July 12,

1988 were termed "Defendant's Motion in Limine, or, in the Alternative for Summary Judgment." It is not apparent, therefore, that Insurance Company sought to have its February 2, 1990 motion to dismiss treated as one for summary judgment.

**4.** Although the notice requirement is strictly enforced, litigants, of course, may waive this notice. *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir.1986).

court cited "the well established rule in this circuit that the 10–day notice requirement of Rule 56(c) is strictly enforced for all litigants ..."); *Herron v. Beck,* 693 F.2d 125, 126 (11th Cir.1982) ("It is well established in this circuit that the ten day notice requirement of Rule 56(c) is strictly enforced.")[5]

The policy considerations underlying the ten-day notice requirement of Rule 56 make it clear why this notice requirement is enforced so strictly. A successful summary judgment motion results in a final adjudication of the merits of a case. Therefore, it is of the utmost importance that parties are aware of the transformation of the motion to dismiss into a motion for summary judgment, and are able to present to the court materials in support of or in opposition to the motion. Compliance with the ten-day notice rule ensures that the parties have the opportunity to present to the court every available argument, legal and factual, and thus serves as a valuable procedural safeguard.[6]

**5.** This same rule was followed in the pre-October 1, 1981 Fifth Circuit, all decisions of which are binding as precedent upon this circuit under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Cases of the former Fifth Circuit that have followed this rule include: *Hickey v. Arkla Industries, Inc.,* 615 F.2d 239, 240 (5th Cir.1980) ("Once again, we hold that where the motion to dismiss is converted into a motion for summary judgment, the notice and hearing requirements of Federal Rules of Civil Procedure 12(b) and 56(c) *must* be followed." (emphasis in original)); *Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979) ("This circuit has upheld the strict requirements of notice embodied in Rule 56 and by reference in Rule 12(b)."); *Davis v. Howard,* 561 F.2d 565, 568–69 (5th Cir.1977) ("We cannot affirm the lower court's disposition since its consideration of the case included matters outside of the pleadings, thus affecting an automatic conversion from a Rule 12(b)(6) motion into a Rule 56 motion. Without any indication that the mandatory requirements of Rule 56 were fulfilled, the judgment likewise falls outside the parameters of the Federal Rules of Civil Procedure as an abuse of discretion and therefore it is without effect."); *Sharlitt v. Gorinstein,* 535 F.2d 282, 283 (5th Cir.1976) ("This Court has interpreted the terms of Rule 56 strictly by refusing to dispense with procedural safeguards in instances where a motion to dismiss is treated as a motion for summary judgment by the district court."). *See also Scott v. Courtesy Inns, Inc.,* 472 F.2d 563 (5th Cir.1973); *Gutierrez v. El Paso Community Action Program,* 462 F.2d 121 (5th Cir.1972).

The ten-day notice requirement of Rule 56 is not enforced as strictly in all of the other circuits. *See, e.g., Moody v. Town of Weymouth,* 805 F.2d 30, 31–32 (1st Cir.1986) ("Because plaintiff has not shown that he would have done something different had the district court taken him by the hand and told him defendant's motion had been converted into a motion for summary judgment and that this something would likely have defeated defendant's motions, we conclude plaintiff has not demonstrated prejudice and that therefore there would be no point in remanding."); *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986) ("[F]ailure to give notice is not reversible error if a party does not attempt to exclude the supporting documents but files its own sworn affidavits in response."); *Western Fire·Ins. Co. v. Copeland,* 786 F.2d 649, 653 (5th Cir.1986) ("[T]his Court has recently recognized that denying the ten-day notice may be harmless under the facts of a particular case. ..."); *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985) ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."); *Kaestel v. Lockhart,* 746 F.2d 1323, 1324 (8th Cir.1984) ("[N]on-compliance in limited circumstances may constitute harmless error."); *Gutwein v. Roche Laboratories,* 739 F.2d 93, 95 (2d Cir.1984) ("While we may have left the door open for application of a harmless error rule, we believe that use of such a rule must be limited to extraordinary cases. ..."); *Portland Retail Druggists Ass'n v. Kaiser Foundation Health Plan,* 662 F.2d 641, 645 (9th Cir. 1981) (The standard for determining adequacy of notice is "whether the party against whom summary judgment was entered was fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment."); *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 391 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981) ("While we agree that the conversion of a 12(b)(6) motion into a summary judgment motion *should* be accompanied by prior notice, ... the failure to afford such procedure does not necessarily mandate reversal." (emphasis in original)); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 393 (6th Cir.1975) ("Whether notice of conversion is required or not depends on the facts and circumstances of each case.")

**6.** This procedural safeguard is even more valuable in light of *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which have had the practical effect of raising the non-moving party's standard to defeat a motion for summary judgment. *See, e.g., In re Colony Square*

Insurance Company claims that the rationale supporting the ten-day notice rule is not furthered by its application in this case because Jones had notice of Insurance Company's motion and an opportunity to respond. There are two cases reported in this circuit in which this court seemed to deviate from its ten-day notice rule. However, the facts of these cases are clearly distinguishable. In *Denis v. Liberty Mutual Ins. Co.*, 791 F.2d 846, 848 (11th Cir. 1986), the defendants filed a motion to dismiss pursuant to Rule 12(b). The plaintiffs never contested this motion, and the district court granted the motion, dismissing the action with prejudice, because recovery was barred by the applicable statute of limitations. The plaintiffs then filed with the court a motion for reconsideration of dismissal under Federal Rule of Civil Procedure 59, attached to which were an affidavit and copies of correspondence between the parties relating to the case. The plaintiffs' motion claimed that these documents raised genuine issues of material fact. The district court denied the motion, granting summary judgment in favor of the defendants. The plaintiffs then appealed the judgment, claiming that they were denied the ten days notice required by Rule 56. In affirming the summary judgment, the *Denis* court stated:

> [The plaintiffs'] motion to reconsider demonstrates [their] awareness that the court would apply a Rule 56 standard. The motion specifically stated that it raised a genuine issue of material fact and that [the defendants were] not entitled to judgment as a matter of law. It is clear that [the plaintiffs] considered the motion to reconsider as converting the 12(b) motion into a rule 56 motion for summary judgment and [were] aware that the court would treat it as such.

*Id.* at 850. The *Denis* case is distinguishable from the instant case. In *Denis* the plaintiffs, the parties seeking reversal of summary judgment for lack of the required ten-day notice, were the parties that introduced matters outside the pleadings and sought to have the motion treated as one for summary judgment. Jones, on the other hand, was not the converting party. Moreover, it is not apparent from the record whether Jones knew of the conversion of Insurance Company's motion. Therefore, *Denis* is not persuasive in this case.

In *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599 (11th Cir.1985), it was clear from the record that the non-moving party knew of the conversion of the motion to dismiss into a motion for summary judgment; sought to effect the conversion by submitting materials outside of the pleadings; introduced all of the documents it wanted the judge to consider; and made all legal and factual arguments it intended to make. *Id.* at 606. The court was convinced, from the record, that the non-moving party knew of the conversion and had nothing else to add to the record. The *Property Management* court went on to say:

> We do not intend to deviate from the longstanding rule in this circuit that notice *must* be given and that failure to do so will result in reversal and a remand. We determine only that in the very unique circumstances presented by this case, we will not remand for further proceedings.

*Id.* at 606–07 (emphasis in original).

The "unique circumstances" present in *Property Management* and in *Denis* are not present here.[7] It is neither apparent from the record that Jones knew of the conversion of the motion, nor clear that Jones had introduced all of the documents he wanted the district court to consider or made all of the arguments he intended to make. To the contrary, in light of the Rule

---

Co., 843 F.2d 479, 481 (11th Cir.1988) ("Under *Anderson v. Liberty Lobby, Inc.* and *Celotex Corp. v. Catrett*, [the non-moving party] has an obligation to come forward with evidence supporting [its] claim in order to withstand a motion for summary judgment.").

7. This court, in an en banc decision, acknowledged the unique nature of the situations in *Denis* and *Property Management & Investments, Inc.*, and recognized that their deviation from the long-standing rule of this circuit was "extremely limited." *Donaldson v. Clark*, 819 F.2d 1551, 1555 n. 3 (11th Cir.1987) (en banc).

60(b) motion filed by Jones on August 30, 1989, based on newly discovered evidence, it is apparent that Jones has not introduced all possible evidence nor made all possible arguments.

The situation in this case is very similar to that in *Finn v. Gunter*, 722 F.2d 711 (11th Cir.1984). In *Finn* this court reversed the district court's grant of summary judgment because the district court failed to comply with the ten-day notice requirement of Rule 56. In dismissing the moving party's argument that the non-moving party had provided the court all of the evidence it possibly could, the *Finn* court stated: "What is important is that [the non-moving party] be given an opportunity to present every factual and legal argument available. Proper procedures must be followed. We will not speculate on what action the parties will take. ..." *Id.* Here, too, correct procedures must be followed. Jones must be given the opportunity, after receipt of proper notice, to bring to the court's attention any and all evidence he might have, including that evidence contained in his Rule 60(b) motion filed August 30, 1989. The evidence that Jones could have introduced warrants our strict enforcement of the notice requirement of Rule 56(c), and, therefore, our reversal of the district court's June 7, 1989 judgment disposing of Jones' claims for punitive damages and statutory penalties under the Georgia No–Fault Act.

The reversal of this judgment for failure to comply with the notice requirement of Rule 56(c) makes it unnecessary for us to consider whether the summary judgment was otherwise improper. We also need not consider Jones' Rule 60(b) motion since the judgment from which Jones sought relief is now vacated. However, it is appropriate for us to address two additional issues that will be important to the resolution of the motion for summary judgment on remand: the interpretation of O.C.G.A. § 33–34–4(a)(2)(B) and the propriety of excluding evidence of the relationship between Insurance Company and its other insureds.[8]

## 2. *Interpretation of O.C.G.A. § 33–34–4(a)(2)(B).*

■ At the time of his injury, Jones had basic no-fault, PIP insurance coverage in accordance with O.C.G.A. § 33–34–4 [9] under a policy issued by Insurance Company. Under O.C.G.A. § 33–34–4, automobile owners are required to have insurance coverage which will provide compensation to insured injured persons, regardless of fault, of up to $5,000. This $5,000 maximum amount of benefits is to include all necessary medical expenses, up to $2,500. Also included under this $5,000 ceiling are loss of earnings benefits. Recovery of "85% of the loss of income or earnings of the insured during disability with a maximum benefit of $200 per week" is provided for by O.C.G.A. § 33–34–4(a)(2)(B). At issue in this case is the correct interpretation of this statutory provision; that is, whether the $200 per week is a rate of payment of loss of earnings benefits, as Jones claims,

---

**8.** On July 12, 1988, Insurance Company filed a motion in limine requesting that the court exclude from the case any evidence offered by Jones concerning the relationship between the insurance company and its other insureds not involved in this action. Insurance Company also filed on July 12, 1988 a "Motion in Limine, or in the Alternative for Summary Judgment", requesting that the court validate Insurance Company's interpretation of O.C.G.A. § 33–34–4(a)(2)(B). On July 18, 1988, the court sent Jones notice to respond to the summary judgment motion as required by Rule 56. On November 12, 1988 the district court issued an order granting both of these motions. The evidentiary issue and the interpretation of O.C.G.A. § 33–34–4(a)(2)(B) both arise from Jones' appeal of this order.

**9.** O.C.G.A. § 33–34–4 provides, in relevant part:

(a) No owner of a motor vehicle required to be registered in this state ... shall operate ... the motor vehicle unless the owner has insurance on the vehicle providing the following minimum coverage:

(1) ...

(2) Compensation to insured injured persons without regard to fault up to an aggregate minimum limit of $5,000 per insured injured person for:

(A) All necessary medical expenses, not to exceed $2,500 ...

(B) 85% of the loss of income or earnings of the insured during disability with a maximum benefit of $200 per week.

or a limit on recoverable loss of earnings benefits, as Insurance Company contends.

■ According to Jones' interpretation, O.C.G.A. § 33–34–4(a)(2)(B) provides loss of earnings benefits to a disabled insured to the fullest extent possible. Jones claims that a disabled insured is to recover 85% of his lost wages, only limited by the $5,000 coverage limit and the proviso that the benefits are payable at the rate of $200 per week. Put differently, a disabled insured is to recover 85% of his lost wages at a rate of $200 per week until the $5,000 maximum amount of aggregate benefits has been received—even if the weekly payments of $200 continue after the insured has returned to work. Jones makes three arguments in support of his interpretation of O.C.G.A. § 33–34–4(a)(2)(B). First, interpreting the $200 per week as a rate of payment furthers the purposes of the Georgia No–Fault Act which include "the elimination of wasteful litigation over moderate to small claims." *Davidson v. Bradford,* 245 Ga. 8, 11, 262 S.E.2d 780, 782 (1980). Jones claims that if the $200 per week is interpreted as a limit on recoverable loss of earnings benefits, the injured insured will be forced to sue the tortfeasor to recover the balance of his actual wage loss.[10] Thus, instead of the litigation of small to moderate claims being eliminated, it would actually be encouraged. Second, Jones contends that interpreting O.C.G.A. § 33–34–4(a)(2)(B) as a $200 per week limit on recoverable lost wage benefits would provide a windfall to the insurer providing no-fault coverage. Instead of having to pay loss of earnings benefits until the injured insured has recovered 85% of his lost wages or until the $5,000 maximum has been reached, the insurer will only have to pay benefits while the insured is out of

work. Third, Jones claims that not interpreting the $200 per week language as a rate of payment would discriminate among disabled insureds based on their level of income — the less a disabled insured makes, the larger the percentage of his loss of earnings he will recover.

Insurance Company relies on the "plain language" of § 33–34–4(a)(2)(B) to support its interpretation of the section as requiring an insurer to pay a disabled insured weekly loss of earnings benefits of $200 or 85% of his income, whichever amount is less, until the $5,000 ceiling on aggregate medical expenses and lost earnings benefits is reached or until the insured is able to return to work, whichever comes first. Stated differently, the $200 per week language in section 33–34–4(a)(2)(B) provides a limit on the amount of loss of earnings benefits a disabled insured can recover.

The district court agreed with Insurance Company, finding that section 33–34–4(a)(2)(B) places a $200 per week limit on reimbursements for lost wages.[11] The district court held, therefore, that Jones was entitled to receive an amount equal to $200 multiplied by the number of weeks of disability.

While O.C.G.A. § 33–34–4(a)(2)(B) may be susceptible to more than one reasonable interpretation, we agree with the district court that the plain language of O.C.G.A. § 33–34–4(a)(2)(B) supports its interpretation as setting a $200 per week limit on the amount of loss of earnings benefits an injured insured may recover. We therefore affirm the district court's construction of O.C.G.A. § 33–34–4(a)(2)(B) as setting a ceiling of $200 per week on loss of earnings benefits.[12]

**10.** According to the Georgia No–Fault Act, a person injured in an automobile accident may not recover from a tortfeasor to the extent basic no-fault insurance coverage is available. *Glover v. Grogan,* 162 Ga.App. 768, 771, 292 S.E.2d 465, 469 (1982).

**11.** The district court based its decision on its reading of the plain language of the statute and on the lack of authority submitted by Jones in support of his view. The district court was unpersuaded by Jones' discrimination argu-

ment, stating that the purpose of the statute is to provide a minimum coverage and that an insured may purchase additional insurance coverage if he finds the $200 per week loss of earnings benefits to be insufficient.

**12.** We do recognize that the interpretation of O.C.G.A. § 33–34–4(a)(2)(B) could be an appropriate question to certify to the Georgia Supreme Court under O.C.G.A. § 15–2–9, but decline to so certify.

### 3. *Evidentiary Ruling.*

■ In furtherance of his claim that Insurance Company acted in bad faith by not providing his benefits in a timely manner, Jones planned to introduce evidence concerning Insurance Company's relationship with other policy holders. Insurance Company sought to exclude this evidence by a motion in limine filed on July 12, 1988. After analyzing the evidence according to Federal Rule of Evidence 403 (Rule 403), the district court found that admitting this evidence would unduly prejudice Insurance Company and would cause undue delay in trial proceedings. In its November 2, 1988 order, the district court granted Insurance Company's motion and prohibited the introduction of this evidence.

■ The standard of review for evidentiary rulings is abuse of discretion. *United States v. Acosta*, 769 F.2d 721, 723 (11th Cir.1985) ("Determinations of the admissability of evidence are in the discretion of the trial judge and will not be reversed by an appellate court unless it finds an abuse of discretion."). We do not conclude that the district court abused its discretion in reviewing the evidence according to Rule 403 and in finding the evidence unduly prejudicial. We therefore affirm that portion of the district court's November 2, 1988 order granting Insurance Company's motion in limine to exclude evidence of Insurance Company's relationship with its other insureds.

AFFIRMED in part, REVERSED in part, and REMANDED.