856 F.2d 1507
 57 USLW 2262, 12 Fed.R.Serv.3d 827
 Eva WASHINGTON, Solana Plaines, and the Savannah Community
Reinvestment Alliance, Plaintiffs-Appellants,
v.
The OFFICE OF THE COMPTROLLER OF THE CURRENCY, Robert
Clarke, Individually and in his official capacity
as comptroller of the currency,
Defendants-Appellees,
First Union Corporation, Intervenor.
 No. 87-8912.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 7, 1988.
 
 Murphy A. Cooper, III, James F. Bass, Jr., Savannah, Ga., Phyllis Holmen, John Cromartie, Jr., Atlanta, Ga., for plaintiffs-appellants.
 Roland B. Williams, Hunter, MaClean, Exlay & Dunn, Savannah, Ga., Mark L. Leemon, Office of the Comptroller of the Currency, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before HILL and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 This is an appeal by the plaintiffs from the dismissal by the trial court under Federal Rule 12(b)(6) (FRCP) for failing to state a claim upon which relief could be granted.
 
 I. BACKGROUND
 
 2
 The complaint alleges that SCRA is an unincorporated association representing the banking and credit needs of low and moderate income people in the Savannah, Chatham County, area and that plaintiffs, Washington and Plaines are low income individuals and members of SCRA and that they are some of the individuals directly suffering from conduct of the Comptroller.
 
 
 3
 The Office of the Comptroller of the Currency (OCC) is responsible for approving or denying applications to merge state banks into national banks. 12 U.S.C. Sec. 215a. On July 16, 1987, First Georgia submitted an application to the OCC to merge First Savannah, a state bank, into First Georgia, a national bank.
 
 
 4
 In considering an application for merger, the OCC must take into account, among other factors, the merging banks' records of performance in meeting the goals of the Community Reinvestment Act (CRA) 12 U.S.C. Sec. 2901, et seq. 12 C.F.R. Sec. 25.8(a). The CRA requires the OCC to "encourage" banks under its jurisdiction "to help meet the credit needs of the local communities in which they are chartered." 12 U.S.C. Sec. 2901(b). This includes the credit needs of low and moderate income neighborhoods. 29 U.S.C. Sec. 2903. The OCC must publish regulations designed to carry out the purposes of the Act. 12 U.S.C. Sec. 2905. Regulations promulgated pursuant to the CRA authorize the OCC to deny an application for merger on the basis of a bank's unsatisfactory performance under the CRA. 12 C.F.R. Sec. 25.8(e).
 
 
 5
 The procedures that the OCC must follow in acting on an application for merger are set out in 12 C.F.R. Part 5. A merger applicant is required to publish notice of its application. 12 C.F.R. Sec. 5.8. Within 30 days after notice of publication, any person may submit written comments and data on an application. 12 C.F.R. Sec. 5.10(a). Also within 30 days after notice by publication, any person may submit a written request for a hearing on an application. 12 C.F.R. Sec. 5.10(b).
 
 
 6
 First Georgia initially published notice of its application on July 16, 1987. The comment period terminated on August 15, 1987. In a letter dated August 14, 1987, received by the OCC on August 18 and accepted as timely, SCRA notified the OCC of its opposition to the proposed merger, and requested a public hearing. SCRA opposed the merger because of what it perceived to be First Savannah's poor record of performance under the CRA. SCRA contended that First Savannah was not meeting the credit needs of the entire Savannah community, particularly the credit needs of low-income and minority segments.
 
 
 7
 By letter dated September 10, 1987, the OCC denied SCRA's request for a public hearing. The denial letter notified SCRA that it would have an additional fourteen days to submit written comments. No comments were forthcoming, but in a letter dated September 23, 1987, Murphy A. Cooper, an attorney for Georgia Legal Services, asked the OCC to reconsider its decision denying a public hearing. The request for reconsideration was denied by letter dated September 28, 1987. On October 2, 1987, the OCC approved the merger of First Savannah into First Georgia. The merger was consummated on December 1, 1987.
 
 
 8
 This action was filed on October 30, 1987, one month before the merger. Plaintiffs alleged that the OCC's decisions denying their request for a hearing, and approving the merger, were arbitrary and capricious and in violation of the CRA and the Administrative Procedure Act (APA), 5 U.S.C. Sec. 551, et seq. Additionally, plaintiffs contend that the regulations promulgated by the OCC, which define the standard the OCC must apply in determining whether to grant a request for a public hearing, are invalid because such regulations lead to arbitrary and discriminatory results.
 
 
 9
 Plaintiffs sought a temporary restraining order and preliminary injunction. They requested that the OCC's decision approving the merger be set aside until the OCC conducts a public hearing or until SCRA receives adequate assurances from First Georgia that the credit needs of low and moderate income neighborhoods of Savannah be met. Plaintiffs also sought an order directing the OCC to promulgate supplemental regulations defining the circumstances under which the OCC is to grant a request for a public hearing. The trial court denied the injunction.
 
 
 10
 Appellants do not appeal from this denial of their motions for injunction. They concede that this issue is now moot.
 
 
 11
 Upon motion to dismiss for failure to state a claim, the trial court considered the administrative record and dismissed the complaint. This appeal followed.
 
 II. ISSUES ON APPEAL
 
 12
 A. Did the trial court's consideration of the administrative record in its order granting the motion to dismiss convert the motion into a motion for summary judgment under Rule 56, F.R.C.P.?
 
 
 13
 B. Did the plaintiffs state a claim for relief under the Federal Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq. as to the invalidity of the regulation governing the requests for public hearings on bank applications, 12 C.F.R. Sec. 5.10 (1987)?
 
 
 14
 C. Is the case moot by reason of the consummation of the merger?
 
 III. DISCUSSION
 
 15
 A. This Court has repeatedly held that when a district court considers matters outside the pleadings in passing on a motion to dismiss under Rule 12(b)(6) F.R.C.P., its failure to give the notice required for consideration of a motion for summary judgment under Rule 56 requires this Court to remand the case for further proceedings under Rule 56 by the trial court. Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir.1985), and cases cited there. The harshness of this rule has been somewhat alleviated, however, in two decisions by this Court, Property Management & Investments, Inc. v. Lewis, 752 F.2d 599 (11th Cir.1985), and Lary v. Ansari, 817 F.2d 1521 (11th Cir.1987).
 
 In Property Management, this Court stated:
 
 16
 It is clearly the law in this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge must give all parties ten-days notice that he is so converting the motion. Herron v. Beck, 693 F.2d 125, 126 (11th Cir.1982); Underwood v. Hunter, 604 F.2d 367, 369 (5th Cir.1979). The purpose of this requirement is to make certain that the parties are aware of the conversion and have an opportunity to present documents and arguments for and against the granting of summary judgment. In this case, the court did not give notice. This is error.
 
 
 17
 For such error, we ordinarily would remand a case for further proceedings consistent with the notice requirement. E.g., Herron, 693 F.2d at 127; Underwood, 604 F.2d at 370. We do not do so in this very unique case only because a careful review of the record persuades us that all of the parties were well aware that the judge was converting this 123(b)(6) motion and that the parties made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled.
 
 
 18
 Id. at 605 (emphasis in original).
 
 
 19
 The question before us, then, comes to this: In this petition for review of a decision by the Office of the Comptroller of the Currency must the review be based solely on the administrative record or is the matter subject to de novo review? We believe this question is answered expressly in the Supreme Court decision in Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In that case, the trial court had considered a petition to review a decision of the Comptroller in denying an application to charter a national bank. The trial court there based its decision to approve the Comptroller's determination by considering the administrative record. The Court of Appeals for the Fourth Circuit reversed, and held that the trial court should have held a de novo hearing to consider the issue as to whether there had been shown to be a "need" for an additional national bank in the community. Upon appeal to the Supreme Court, the Court said:
 
 
 20
 The appropriate standard for review was, accordingly, whether the Comptroller's adjudication was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," as specified in 5 U.S.C. Sec. 706(2)(a). In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.
 
 
 21
 * * *
 
 
 22
 411 U.S. at 142, 93 S.Ct. at 1244.
 
 
 23
 Under this ruling, it seems clear that the only matter for consideration by the trial court in this case was the administrative record. This is true whether the administrative record had been attached as an exhibit to the complaint or was tendered by the OCC in its responsive pleadings. Therefore, if the administrative record was the only basis on which the petitioners could prevail before the trial court, this would be one of the very exceptional situations in which the trial court's consideration of matters outside the complaint should not require a remand to the trial court for the required notice under the summary judgment rule. As stated by this Court in Property Management, supra:
 
 
 24
 For such error, we ordinarily would remand a case consistent with the notice requirement. E.g., Herron, 693 F.2d at 127; Underwood, 604 F.2d at 370. We do not do so in this very unique case only because a careful review of the record persuades us that all of the parties are well aware that the judge was converting the 12(b)(6) motion and that the parties made all the arguments and submitted all the documents they would have presented had they received notice to which they were entitled.
 
 
 25
 752 F.2d at 605 (emphasis added.) Here, we must assume that the parties were aware of the law requiring consideration of the administrative record rather than the holding of a de novo hearing by the district court. Therefore, in this case, we must assume that the petitioners were well aware of the fact that consideration of the administrative record must be the basis of the trial court's decision. Therefore, nothing could be done to benefit the petitioners below by remanding the case to the district court for the giving of the Rule 56 notice.
 
 
 26
 The trial court properly considered the administrative record on the 12(b)(6) motion in "this very unique case."
 
 B. Correctness of 12(b)(6) Order
 
 27
 We turn now to the question of the correctness of the trial court's dismissal of the complaint under 12(b)(6).
 
 
 28
 Under regulations issued by the OCC, 12 C.F.R. Sec. 5.10(b)(3): "[a] hearing request shall generally be granted only if it is determined that written submissions would be inadequate or that a hearing would otherwise be beneficial to the decision-making process." Since the OCC is not required by statute to hold a public hearing before approving a bank merger, the OCC's denial of a hearing may be reviewed only to determine whether the decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. C & H Transportation Co. v. ICC, 704 F.2d 834, 848 (5th Cir.1983).
 
 
 29
 The OCC's denial of a hearing was based on a recommendation of the local national bank examiner. The official answer from OCC, to the request for a hearing was in the following language:
 
 
 30
 In light of the nature of the issues and facts to be presented, ... the parties will not be significantly prejudiced by presenting their cases in written form ... and an oral presentation would not be beneficial to the decision-making process ... the substantial expense and inconvenience ... is not warranted....
 
 
 31
 The trial court also based its decision that OCC's denial of a hearing was not arbitrary on a memorandum submitted to OCC by the local bank examiner, Ms. Tubbs, particularly, as stated by the trial court as follows:
 
 
 32
 The only aspect of a public hearing which would not be accomplished in any written document is the follow up to the party being questioned. Directive and explicit statements in the written format would eliminate any need for follow up questions.... the written format is considered the best alternative. The protestant's concerns ... must be stated and documented. The response by the appellant/bank to the items would either verify or nullify any comments with further documentation.... . This arrangement allows for both sides to be heard.
 
 
 33
 Ms. Tubbs also determined that there would be no benefit to the decision-making process in providing a forum between the parties. She noted that the "prime deciding factor" relevant to concerns expressed by SCRA would be the current CRA ratings of the banks participating in the merger as well as the past CRA performance records of both banks. Ms. Tubbs noted that examination data on the merging banks indicated satisfactory CRA performance. Further, First Georgia had committed to certain voluntary undertakings demonstrating that CRA performance was not a cause for concern.
 
 The trial court then determined:
 
 34
 It is clear from the administrative record that the OCC's decision denying SCRA's request for a hearing was the product of careful consideration. The decision to deny a public hearing was neither arbitrary and capricious, nor an abuse of discretion.
 
 
 35
 We agree with this determination. While we recognize that the Congress has expressed an especial interest in the encouragement by OCC of banks under its jurisdiction to meet the goals of the Community Reinvestment Act and particularly "to help meet the credit needs of the local communities in which they are chartered," including the credit needs of low and moderate income neighborhoods, 12 U.S.C. Sec. 2903, it is clear that the statute authorized the OCC to act in bank merger situations without the granting of a hearing to every person who opposed such merger. As is plain from the face of the regulation, the granting of a hearing is the exception rather than the rule. Thus, substantial discretion is granted to the OCC to deny a hearing.
 
 
 36
 By comparing the administrative record here with that before the Supreme Court in Camp v. Pitts, supra, see fn. 2, 411 U.S. at 139, fn. 2, 93 S.Ct. at 1242, we must conclude that OCC's exercising its discretion to deny a hearing in this case was not arbitrary, capricious, or an abuse of discretion.
 
 
 37
 There remains the further question, however, of whether OCC fully complied with the requirements of the Administrative Procedure Act, 5 U.S.C. Sec. 555(e). This section provides as follows:
 
 
 38
 (e) Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.
 
 
 39
 5 U.S.C. Sec. 555(e).
 
 
 40
 Referring to the "contemporaneous explanation of the agency decision" in Camp v. Pitts, supra, the Court said:
 
 
 41
 The explanation may have been curt, but it surely indicated the determinative reason for the final action taken: the finding that a new bank was an uneconomic venture in light of the banking needs and the banking services already available in the surrounding community....
 
 
 42
 411 U.S. at 143, 93 S.Ct. at 1244.
 
 
 43
 No such explanation was contained in the notice of rejection of the request for a hearing in this case. In effect, the OCC response to the request for a hearing was simply that "no hearing is needed." The statement that "the substantial expense and inconvenience ... is not warranted," obviously added nothing to the statement. This was not "a brief statement of the grounds for denial" as required under Section 555(e). If the notice to SCRA had contained a statement of the facts as found by the trial court, supra, contained in the bank examiner's recommendation to OCC, we would not say that the notice was inadequate under the Camp decision. Since, however, it did not contain a statement as to any of these facts, it was a mere ipsi dixit, without any reasons being given for the rejection of the request for a hearing.
 
 
 44
 The request for a hearing in this particular pending merger focuses only, however, on the merger that has now been accomplished. Since SCRA did not appeal from the denial by the trial court of the injunction against the merger, it has now been completed, since SCRA was unable to post bond to prevent the merger pending appeal. The failure of the OCC to give adequate notice of its reason for rejecting the request for a hearing has no bearing on the remaining contention by the SCRA that the denial of a hearing was arbitrary or capricious because based upon a regulation that did not adequately differentiate between the situations in which a hearing should or should not be granted by OCC.
 
 
 45
 Having decided that the OCC had broad discretion on granting or denying a hearing, we reject the contention on appeal that we should require the OCC to modify its regulations in a manner that will set objective standards for the exercise of its discretionary authority to grant or deny a hearing.
 
 
 46
 While we recognize that the particular issue raised by SCRA is one that in many cases might well be best disposed of after an oral hearing, we cannot conclude that the regulation dealing with this subject is invalid as not providing objective standards by which the OCC should decide this issue.
 
 IV. MOOTNESS OF THE APPEAL
 
 47
 As we have noted, the issue of the merger of the two banks has now been settled. The issue as to the validity of the regulation, 12 C.F.R. Sec. 5.10(b)(3), because, in effect, it gives too much discretion to the OCC in granting or denying a hearing is still open for our consideration. This is true because a case against OCC is not moot if "the challenged action is too short in duration to be fully litigated prior to its cessation or termination...." B & B Chemical Co. v. United States E.P.A., 806 F.2d 987 (11th Cir.1986) (emphasis added.) The complaint in this case alleges that
 
 
 48
 Plaintiffs, EVA WASHINGTON and SOLANO PLAINES, are low-income individuals and members of the Savannah Community Reinvestment Alliance, hereinafter referred to SCRA. Plaintiffs are also some of the individuals directly suffering from conduct of the Comptroller.
 
 
 49
 SCRA is an unincorporated association representing the banking and credit needs of low and moderate income people in the Savannah, Chatham County[,] area.
 
 
 50
 It therefore appears that the association plaintiffs and its members, including the individual plaintiffs, are regularly engaged in reviewing the activities of the OCC in its statutory dealings with banks in Chatham County in order to satisfy themselves that the OCC's action conforms to the federal statutes. The likelihood of such action on their part, in objecting to certain bank activities because in violation of the federal statutes, provide "a reasonable expectation that the same complaining party will be subject to the same action again...." 806 F.2d at 990. This, therefore, warrants our consideration of this issue, which we have now decided in favor of the OCC.
 
 
 51
 The judgment is AFFIRMED.