[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14419
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-00057-SDM-PRL

RAMON LOPEZ,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
U.S. DEPARTMENT OF JUSTICE,
U.S. ATTORNEY,
Executive Office,
HARRELL WATTS,
Administrative National Inmates Appeals,
WARDEN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 15, 2016)

Before WILLIAM PRYOR, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

This action filed by Ramon Lopez, a Florida prisoner proceeding *pro se*, broadly concerns a freeze prison officials placed on his prison trust account in response to two writs of garnishment issued by federal district courts. The writs issued in order to collect $45,000 in fines imposed against Lopez in connection with two criminal convictions in 1992 and 1993. In his complaint, Lopez alleged that various defendants, primarily officials and employees of the Federal Bureau of Prisons ("BOP") and the Coleman Federal Correctional Complex ("FCC Coleman"), violated his constitutional rights and BOP policies through their actions regarding his trust account, and then failed to adequately respond to his requests for information about the account freeze. The district court dismissed Lopez's complaint and then denied his motion for reconsideration of the dismissal. Lopez challenges both rulings on appeal. After careful review, we affirm in part and vacate and remand in part.

## I. BACKGROUND

Lopez appeals from a grant of a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., so we accept as true the allegations in his operative second amended complaint. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012). In addition, because Lopez attached as exhibits

2

numerous documents to his complaint, we treat these documents as part of the complaint for Rule 12(b)(6) purposes, *see id.*, and we also consider the judgments and writs of garnishment from Lopez's criminal cases, attached to the defendants' motion to dismiss, because they are central to Lopez's claims and their authenticity is not disputed, *see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).[1]

## A.    *Factual Allegations and Relevant Background*

In 1992 and 1993, Lopez was convicted of various drug-trafficking crimes and ordered to pay a total of $45,000 in fines.  $20,000 was to be paid in installments as directed by the United States Probation Office, while $25,000 was to be paid immediately.  Lopez is currently serving a life sentence.

After his convictions but before the events giving rise to this case, Lopez received and deposited into his inmate trust account approximately $90,000 from two sources:  a successful forfeiture challenge and an insurance settlement. Defendants Scott Middlebrooks (Warden of United States Penitentiary Coleman 1 ("USP Coleman"), part of FCC Coleman) and Susan Church (FCC Coleman's Business Administrator), approved the deposit and represented to Lopez that the money could be withdrawn as needed.

---

[1] The judgments and writs are also public records subject to judicial notice.  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents . . . ."); Fed. R. Evid. 201(b).

3

Lopez was able to withdraw funds from his trust account without issue until January 2009, when Middlebrooks delegated to Defendant Steven Mora (Assistant Warden of USP Coleman) the authority to review and approve all withdrawal requests over $250. Mora, in turn, tasked the Prison Special Investigation Unit ("Investigation Unit"), composed of Defendants C. R. Ayers, J. Kajander, and J. Bengford, with investigating inmate funds for any illicit sources and conducting background checks of persons receiving funds from inmates. In Lopez's view, the actions of the Investigation Unit caused "excessive and unnecessary delays and . . . misplacements of the plaintiff's withdrawal of funds requests," harming Lopez's ability to timely comply with his financial obligations and to support his children. *See* Second Am. Compl. ¶ 4 (Doc. 18).

Lopez complained about the delays to Mora, who said he made his own policy; to Ayers, who said he could expedite Lopez's requests if he provided information about illegal prison activities; and finally to Middlebrooks, who referred the matter back to Mora. Although Mora was unhappy that Lopez had complained to Middlebrooks, shortly thereafter, Lopez's pending requests were processed.

In September 2009, Lopez submitted withdrawal requests in order to assist his children and pay legal fees, but his requests were not processed. About two months later, Lopez learned that Middlebrooks had ordered the encumbrance of

$45,000 from his trust account to collect the criminal fines ordered over fifteen years prior. Thereafter, two of the September 2009 withdrawal requests, though they had been approved by Mora and Bengford, were voided by Defendant Jeff Campbell (Supervisory Attorney of the FCC Coleman's Legal Department).

Frustrated by the encumbrance on his account, Lopez began filing informal and formal grievances through the internal BOP administrative process. He requested the following: (1) removal of the encumbrance on his account; (2) an investigation of the Investigation Unit's actions related to that encumbrance; (3) processing of the two rejected withdrawal requests using unencumbered funds in his account; and (4) access to his earned wages so that he could purchase basic necessities and typing materials. *Id.*, Exhs. A & B. It appears that Lopez believed his funds had been frozen by or at the request of the Investigation Unit in retaliation for complaining about delays and for not cooperating.

In written responses to Lopez's grievances, Middlebrooks explained that Lopez's first request could not be granted because the encumbrance came at the request of the United States Attorney. Specifically, in November 2009, the United States Attorney's Office in the Southern District of Florida had applied for and obtained two writs of garnishment in order to collect the amount of the criminal fines "plus statutory interest." The writs directed FCC Coleman to "immediately withhold" from Lopez "any property or assets" of Lopez "and retain it in your

possession until you receive instructions from the Court which will tell you what to do with the property." Defs.' Mot. to Dismiss, Exh. 2 at 3 (Doc. 42-2).

Middlebrooks denied Lopez's second request because, as the encumbrance came at the request of the U.S. Attorney, he found no evidence of retaliation by prison staff. Second Am. Compl., Exh. C (Doc. 18). As for Lopez's third request—to have his withdrawals processed using unencumbered funds—Middlebrooks found it duplicative of the first request. Finally, Middlebrooks granted Lopez's fourth request in part and released the freeze on his earned wages. Lopez appealed Middlebrooks's responses, and they were affirmed at three levels, including at the national level by Defendant Harrell Watts (BOP Administrator of National Inmate Appeals).

In addition to BOP grievances, Lopez also filed several Freedom of Information Act ("FOIA") requests that he says were denied or "ignored." *Id.* ¶ 10, 12, 15. In a FOIA Request dated November 11, 2009, (later designated as "No. 10-02251"), Lopez sought information related to the initial encumbrance of his account in November 2009, including the memorandum from the Warden authorizing the encumbrance. *Id.*, Exh. E. BOP provided nineteen pages of documents in response. Lopez appealed. On March, 3, 2010, the Office of Information Policy at the U.S. Department of Justice affirmed the BOP's action, concluding that the response constituted a "full release of all responsive records"

and that BOP "conducted an adequate, reasonable search for records responsive to [Lopez's] request." *Id.*, Exh. F.

Lopez appears to have filed two additional FOIA requests, dated April 28, 2010, and May 25, 2010, for information related to the freezing of account funds on specific dates after the initial encumbrance ($7,474 on March 31; $61 on April 21; and $14 on May 17). *Id.*, Exh. H. He also filed a FOIA request, dated August 19, 2010, for information related to the district court's issuance of the garnishment orders and the amount he still owed in fines.

In February 2010, Lopez filed an administrative claim for $75,000 in damages under the Federal Tort Claims Act based on the "ill-advised and unwarranted" encumbrance on his account. *Id.*, Exh. G. Campbell denied this claim in a letter dated July 9, 2010, explaining that Lopez's trust account had been encumbered in accordance with the two writs of garnishment and that there was no evidence of negligence on the part of BOP employees.

Throughout this time, Lopez alleged, Church "kept mute about all violations" Lopez was enduring, even though, as trustee of his trust account, she "had a fiduciary duty to protect and defend that account." *Id.* ¶ 16.

## B.    *Procedural History*

Lopez filed his initial *pro se* complaint in the Middle District of Florida in February 2011 and amended his complaint the following month. He later filed the

7

operative second amended complaint in December 2011, naming as defendants the United States, the United States Department of Justice ("DOJ"), Ayers, Bengford, Campbell, Church, Kajander, Middlebrooks, Mora, and Watts.

Lopez raised claims under (1) the Federal Tort Claims Act ("FTCA"), for the "negligence, assault and injury, fraud, retaliation, violation of fiduciary duty, and an abuse of authority or discretion" of the various defendants; (2) *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), based on the individual defendants' violation of his rights to (a) "be free from unreasonable seizure of his property, retaliation, and from subjection to disparity"; (b) security in his trust account; and (c) access to the courts; (3) FOIA, based on DOJ's and BOP's "failure to time[ly] and properly respond, and/or to respond at all" to his FOIA requests; and, finally, (4) the Administrative Procedure Act ("APA"), based on BOP's allegedly arbitrary and capricious actions and its failure to follow its own policies. As relief, Lopez requested $75,000 in compensatory damages, plus punitive damages; the processing of his FOIA requests; and declaratory and injunctive relief regarding BOP's alleged violation of its own policies.

The United States, on behalf of itself and most of the individual defendants, moved to dismiss Lopez's complaint on various grounds, including the doctrines of

8

sovereign immunity and qualified immunity.[2]  In response, Lopez filed a motion requesting discovery to refute points raised in the motion to dismiss, such as whether the court had personal jurisdiction over Watts, whether the defendants were acting within the scope of their discretionary authority, and whether Lopez exhausted his FOIA administrative remedies.  A magistrate judge denied Lopez's discovery request in an order addressing various motions.  Lopez did not appeal the magistrate judge's ruling to the district court.

Lopez responded in opposition to the United States's motion to dismiss. According to Lopez, the writs of garnishment did not immunize the individual defendants from liability because they could still be held liable for their actions both before and after the writs issued.  Lopez expressly stated for the first time his belief that Mora and the Investigation Unit asked the U.S. Attorney to apply for the writs to punish him for complaining about the problems he faced with his withdrawal requests.  In doing so, Lopez claimed, the defendants retaliated against him for exercising his First Amendment right of free speech.  Lopez also complained that his rights to property and due process had been violated because the defendants froze all his funds, not just the $45,000 total fine amount.

At the court's request, the United States filed, on August 15, 2013, a supplement to its motion to dismiss addressing Lopez's FOIA Request No. 10-

---

[2] The United States noted that not all defendants had been served and that some of the individual defendants had not yet been approved for representation by the Department of Justice.

9

02251.  The United States attached various documents related to Lopez's FOIA requests, including a declaration from Christine Greene, the FOIA and Privacy Act Administrator for BOP's regional office that handled requests arising from United States Prison Coleman.  Greene indicated that she had handled Request No. 10-02251 and that Lopez had filed one other FOIA request, designated as No. 10-07847, which also requested all documents related to the freezing of his trust account.

On August 27, 2013, the district court entered an order granting the United States's motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.  The court found that qualified immunity shielded the individual defendants from Lopez's *Bivens* claims because the defendants were simply complying with court orders.  With regard to the FTCA claim, and in light of the writs of garnishment, the court concluded that Lopez's allegations failed to state a claim for negligence.  As for the FOIA claims, the court determined that BOP's response to Request No. 10-02251 was reasonable and that Lopez had neither identified any document he believed BOP failed to disclose nor alleged that BOP's search was not reasonable or in bad faith.[3]  Finally, Lopez's APA claim failed, according to the court,

---

[3] Lopez did do so in a response to the United States's supplemental motion to dismiss, which he submitted on August 26, 2013, but the response was not considered by the court because it was not received until after the court entered judgment.

10

because Lopez did not "allege with any specificity how the defendants violated the [APA]."  The district court entered judgment dismissing the action.

Lopez timely moved to reconsider the judgment under Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure.  He said that the district court ignored some material allegations, including that retaliation by prison staff caused the writs of garnishment to be issued, that the encumbrance on his account was not limited to the $45,000 fine amount, and that his FOIA claims were not limited to request No. 10-02251, to which BOP's response was inadequate, but also were based on BOP's failure to respond to three other FOIA requests.  Lopez also alleged that the court failed to address his other constitutional claims, including First Amendment retaliation.

In July 2014, the district court denied Lopez's motion for reconsideration. The court specifically addressed Lopez's arguments related to his FOIA requests. Relying on Greene's declaration, attached to the United States's supplemental motion to dismiss, the district court concluded that BOP was not required to separately respond to the April 28, 2010, and May 25, 2010, requests because BOP had released the documents responsive to those requests in response to Request No. 10-07847.  The court found that dismissal for improper venue was appropriate for Lopez's challenge relating to the August 19, 2010, request.  Lopez now appeals.

11

## II.  STANDARDS OF REVIEW

We review *de novo* the dismissal of a complaint under Rule 12(b)(6), accepting as true the facts alleged in the complaint and construing them in the light most favorable to the plaintiff.  *Hunt v. Aimco Props, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).  We review for an abuse of discretion the dismissal of a claim for improper venue, *Algodonera De Las Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005), the denial of discovery, *Holloman v. Mail–Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006), and the denial of a motion to reconsider, *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

We liberally construe *pro se* pleadings.  *Campbell v. Air Jamaica Ltd.,* 760 F.3d 1165, 1168 (11th Cir. 2014).  However, the leniency afforded *pro se* litigants does not give courts license to serve as *de facto* counsel or to rewrite an otherwise deficient pleading in order to sustain an action.  *Id.* at 1168–69.

## III.  DISCUSSION

To survive dismissal for failure to state a claim, the factual allegations in the complaint, accepted as true, must be sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  In other words, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S. Ct. at 1974. The well-pled facts in the complaint must be sufficient to "permit the court to infer

more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).

A complaint that offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not be sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S. Ct. at 1949 (internal quotation marks omitted; alteration adopted). Likewise, we have stated that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## A.   *Discovery*

Lopez first contends that he should have been granted discovery before the district court dismissed his complaint. We cannot, however, review the magistrate judge's order denying Lopez's discovery request because Lopez did not timely object to the order. *See Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("[W]here a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court."). Objections to a magistrate judge's non-dispositive order, such as a discovery order, must be filed with 14 days after a party is served with a copy of the order, and "[a] party may not assign as error a defect in the order

13

not timely objected to." Fed. R. Civ. P. 72(a). Here, no timely objections were filed, so Lopez waived review of the discovery order. *See Smith*, 487 F.3d at 1365.

In any case, the magistrate judge properly denied discovery before the district court dismissed the case under Rule 12(b)(6). While discovery may be necessary and appropriate to resolve a *factual* challenge to the district court's jurisdiction, discovery is not necessary where, as here, the court must resolve a *facial* challenge to the legal sufficiency of a claim, such as a motion to dismiss under Rule 12(b)(6). *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). Though the United States raised jurisdictional arguments in its motion to dismiss, the district court dismissed the case under Rule 12(b)(6).

## B.    Bivens *and Qualified Immunity*

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officials based on the violation of a federal constitutional right. *Iqbal*, 556 U.S. at 675, 129 S. Ct. at 1947 (noting that a *Bivens* action is the federal analog to an action against state officials under 42 U.S.C. § 1983); *Hartman v. Moore*, 547 U.S. 250, 254 n.2, 126 S. Ct. 1695, 1700 n.2 (2006). However, qualified immunity protects officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).

14

To be entitled to qualified immunity, officials bear the initial burden of showing that they were acting within the scope of their discretionary authority. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The burden then shifts to the plaintiffs to show that the defendant is not entitled to qualified immunity by alleging (1) a violation of a constitutional right (2) that was "clearly established" at the time of the alleged violation. *Id.* When a district court is evaluating a Rule 12(b)(6) motion to dismiss based on qualified immunity, it "should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007).

Initially, all actions allegedly taken by the individual defendants were within the scope of their discretionary authority. Government officials act within the scope of discretionary authority when performing a legitimate job-related function through means that were within their power to utilize. *Holloman*, 370 F.3d at 1265–66. Here, Mora's and the Investigation Unit's alleged actions meet this test. They had been authorized to approve withdrawal requests over $250 and, to that end, to investigate the funds in inmate accounts. Likewise, Middlebrooks, as Warden, was authorized by regulations to encumber funds in inmate trust accounts, and he was acting pursuant to writs of garnishment issued by a federal district court. Accordingly, the defendants met their initial burden of showing that

15

qualified immunity applied, and the burden then shifted to Lopez to show that the defendants were not entitled to qualified immunity.

Lopez first contends that Mora and the Investigation Unit retaliated against him for filing grievances by (a) delaying his withdrawal requests and (b) triggering the freeze on his account. The First Amendment forbids prison officials from retaliating against prisoners for exercising their right of free speech by filing prison grievances. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To prove a First Amendment retaliation claim, an inmate must show that (1) his speech was constitutionally protected, (2) he suffered an adverse action that would likely deter a person of ordinary firmness from engaging in such speech, and (3) a causal relationship between the retaliatory action and the protected speech existed. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Liberally construing Lopez's complaint and accepting his factual allegations as true, Lopez has not sufficiently alleged a violation of his clearly established First Amendment rights.[4] First, we can find no plausible causal relationship between the excessive delays in processing his withdrawal requests and the protected speech. The processing problems began in January 2009, when prison officials began investigating inmate funds for illicit sources. Lopez complained,

---

[4] The district court did not address Lopez's retaliation claim, but, on *de novo* review, we may affirm on any adequate ground supported by the record. *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 983 (11th Cir. 2003).

and the processing delays continued, but Lopez did not allege that the processing problems got any worse as a result of his complaints. In fact, he alleged that some of his withdrawal requests were processed after he complained. Under the circumstances, the fact that Lopez's September 2009 withdrawal requests were delayed after he engaged in protected speech, just as his earlier requests had been delayed *before* he engaged in protected speech, does not show a plausible causal connection between the alleged retaliation and the protected speech.

Second, Lopez's allegations do not plausibly connect his protected speech with the encumbrance of his funds. While Lopez appears to have believed that the Investigation Unit contacted the U.S. Attorney's Office in retaliation for filing grievances, he did not allege that fact in his second amended complaint, and, in any case, he provided no "further factual enhancement" for this speculative and unsupported assertion. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Such "unwarranted deductions of facts" will not prevent dismissal. *Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188. In addition, Lopez's contention that Mora and the Investigation Unit delayed his requests for the purpose of allowing the U.S. Attorney to apply for the writs of garnishment is inconsistent with other allegations in his complaint, specifically that Mora and Bengford (of the Investigation Unit) had approved the two September 2009 withdrawal requests that were later voided by Campbell after the writs issued.

17

Lopez also claims that his rights to due process, security in his account, and access to courts were violated when the defendants, without notice, expanded the freeze on his account beyond the $45,000 fine amount and left him without funds to buy typing materials for court. However, despite his assertions to the contrary, the writs of garnishment were not limited to $45,000, the amount of the fines imposed in 1992 and 1993. The writs directed FCC Coleman to withhold from Lopez "*any* property or assets" within the prison's custody, noting that Lopez may be responsible for the amount of the fines plus "statutory interest."[5] Based on the writs, it was reasonable for the defendants to expand the encumbrance, initially set at $45,000, to include "any property or assets" of Lopez, even if doing so may have affected Lopez's ability to purchase typing materials and other basic needs.

Lopez also has not shown that he was entitled to notice before his account was frozen, and, in any case, adequate process was available to him to challenge the validity of the writs of garnishment through his criminal cases.[6] *See, e.g.*, *United States v. Lopez*, 466 F. App'x 829 (11th Cir. 2012). "All that due process requires . . . is a post-deprivation means of redress for property deprivations satisfying the requirements of procedural due process." *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994) (*en banc*) (internal quotation marks omitted; alteration

---

[5] According to the United States, Lopez's total liability, including interest, when the writs issued was over $70,000, more than the funds in his trust account at the time.

[6] The validity of the writs is not at issue in this case.

18

adopted).    Accordingly, Lopez has not shown that the defendants violated his clearly established due-process rights.

In sum, Lopez has not sufficiently alleged a violation of a clearly established constitutional right.  The district court properly dismissed his *Bivens* claims against the individual defendants.

## C.    *Federal Tort Claims Act*

Based on the same alleged actions underlying his *Bivens* claims, Lopez alleged that the United States was liable under the FTCA.  Through the FTCA, the United States has, as a general matter, waived its sovereign immunity from suits based on state-law tort claims.  *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015).  An action against the United States under the FTCA is the exclusive remedy for "injury or loss of property" caused by "the negligent or wrongful act[s] or omission[s]" of federal employees acting within the scope of their employment. 28 U.S.C. §§ 2679, 1346(b); *United States v. Smith*, 499 U.S. 160, 165–66, 111 S. Ct. 1180, 1184–85 (1991).

Here, Lopez has not alleged a claim cognizable under the FTCA.  In the underlying administrative claim Lopez filed as a prerequisite to suit under the FTCA, *see Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) ("A federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency." (citing 28

U.S.C. § 2675(a)), he alleged that the encumbrance was "ill-advised and unwarranted" and instigated by the Investigation Unit in collusion with the U.S. Attorney. However, the encumbrance of his account, ordered by facially valid writs of garnishment, was not "negligent or wrongful." *See* 28 U.S.C. §§ 2679, 1346(b). Nor has Lopez made a showing that the Investigation Unit breached a duty owed to him by allegedly tipping off the U.S. Attorney, and Lopez's claim of First Amendment retaliation is not cognizable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477–478, 114 S. Ct. 996, 1001 (1994) (constitutional tort claims are not cognizable under the FTCA). Lopez also alleged that the failure to provide him with copies of the writs of garnishment and the answer to the writs amounted to gross negligence, but these actions alone did not cause any "loss of property."

To the extent Lopez argues that other acts or omissions of the defendants violated the FTCA, he did not clearly present these grounds for liability in his administrative claim, so we lack jurisdiction to review them. *See Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006) ("The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government."). In any case, he has not identified with any specificity how the acts or omissions of the defendants were tortious under state law. *See Zelaya*, 781 F.3d at 1324 ("[A] state tort cause of action is a *sine qua non* of FTCA jurisdiction,

and we have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action."). Lopez's broad and conclusory allegations of wrongdoing are insufficient to raise his right to relief above the speculative level. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965; *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (the allegations must "permit the court to infer more than the mere possibility of misconduct"). Accordingly, the district court properly dismissed Lopez's FTCA claim.

## D.    *Administrative Procedure Act*

A person who suffers a legal wrong because of "final agency action" has a right to judicial review under the APA when "there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. The standards of review under the APA are set forth in 5 U.S.C. § 706. "Agency action" "includes the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

Here, the district court correctly dismissed Lopez's APA claim because Lopez did not allege facts sufficient to establish a legal wrong done to him by agency action for which there was no other adequate remedy in court. The APA is not available with regard to Lopez's FOIA claims because the FOIA itself provides an adequate remedy in court. *See Id.* § 552(a)(4)(B). Lopez has not otherwise identified an "agency action" that has caused him harm. Instead, Lopez's claims

focus on actions taken by individual defendants allegedly in violation of agency policy. Accordingly, Lopez has not shown that the APA applies.

### E.    *Freedom of Information Act*

The "FOIA is a broad disclosure statute which evidences a strong public policy in favor of public access to information in the possession of federal agencies." *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1555 (11th Cir. 1990) (internal quotation marks omitted), *rev'd on other grounds sub nom. U.S. Dep't of State v. Ray*, 502 U.S. 164, 112 S. Ct. 541 (1991). The FOIA requires a federal agency, upon a request for records that reasonably describes documents held by that agency, to make those documents promptly available to the requester unless an exemption from disclosure applies. 5 U.S.C. § 552(a)(3), (b). An agency must make reasonable efforts to search for the records identified in a FOIA request. *Id.* § 552(a)(3)(C).

A plaintiff may file a complaint in federal court under the FOIA after exhausting his administrative remedies, and the district court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). In an action under the FOIA, the agency bears the burden of showing that its search was "reasonable." *Ray*, 908 F.2d at 1558. The agency must demonstrate that it conducted a search reasonably calculated to uncover all

relevant documents, not that its search was exhaustive, and the agency may meet its burden with relatively detailed affidavits of responsible officials. *Id.* If the agency satisfies its burden, "the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." *Id.* We have recognized that FOIA cases generally should be handled on motions for summary judgment once the documents at issue are properly identified. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).

Liberally construed, Lopez's second amended complaint alleged that DOJ and BOP inadequately responded to one FOIA request, No. 10-02251, and failed to respond to three other FOIA requests, dated April 28, May 25, and August 19 of 2010. The district court, in turn, concluded that the response to No. 10-02251 was reasonable, that the BOP did not need to respond to the April 28 and May 25 requests because Lopez received the requested information in response to a different FOIA request, No. 10-07847, and that the challenge to the August 19 FOIA request was filed in the wrong venue. After careful review, we vacate the dismissal of Lopez's FOIA claims and remand for further proceedings.

First, Lopez sufficiently alleged that he did not receive an adequate response to FOIA Request No. 10-02251. In that request, Lopez specifically asked for the Warden's memorandum authorizing the encumbrance. Lopez appears to have been

23

referring to a BOP Program Statement entitled, "Trust Fund/Deposit Fund Manual," P.S. 4500.11, which states that "[i]t is essential to document all encumbrances" and that the Warden generally must prepare a signed memorandum "indicating the amount to be encumbered and the reason for the encumbrance." P.S. 4500.11(8.8), *available at* https://www.bop.gov/policy/progstat/4500_011.pdf. It does not appear that Lopez received the Warden's memorandum in response to his FOIA request. Thus, Lopez plausibly alleged that BOP failed to reasonably respond to his FOIA request. As with most FOIA cases, this claim should be handled on a motion for summary judgment. *See Miccosukee Tribe*, 516 F.3d at 1243.

Second, the district court procedurally erred by relying on matters outside of the pleadings in dismissing Lopez's claims with regard to the alleged April 28 and May 25 FOIA requests. *See Griffith v. Wainwright*, 772 F.2d 822, 824 (11th Cir. 1985) (stating that we may raise this issue *sua sponte*). Generally, if the district court considers matters outside the pleadings in ruling on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court must give the parties notice of the conversion and "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* We apply this notice requirement strictly: if notice is not provided, "the case will be reversed and remanded so that the district court may provide the non-

24

moving party with adequate notice." *Jones v. Auto. Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1532 (11th Cir. 1990); *see Herron v. Beck*, 693 F.2d 125, 127 (11th Cir. 1982) ("[A] court should be particularly careful to ensure proper notice to a *pro se* litigant.").

Here, in concluding that the BOP did not need to respond to Lopez's April 28 and May 25 FOIA requests, the district court relied on a FOIA Administrator's declaration that was attached to the United States's supplemental motion to dismiss. In particular, the court relied on facts in the declaration regarding BOP's response to a FOIA request that was not alleged in the complaint, No. 10-07847. Thus, the court considered matters outside the pleadings but did not treat the motion to dismiss as one for summary judgment and give Lopez notice and an opportunity to respond. Accordingly, "the case will be reversed and remanded so that the district court may provide the non-moving party with adequate notice." *Jones*, 917 F.2d at 1532.

Finally, we find that a lack of notice likewise calls for vacating the dismissal for improper venue of Lopez's FOIA claim based on the August 19 request for information related to the garnishment proceedings in the Southern District of Florida. While "a district court may raise on its own motion an issue of defective venue[,] . . . the court may not dismiss without first giving the parties an opportunity to present their views on the issue." *Lipofsky v. New York State*

25

*Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988).  Here, the court raised the issue of improper venue *sua sponte* without giving Lopez an opportunity to present his views on the issue, including whether transfer, as opposed to dismissal, was appropriate.  *See* 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

Consequently, we vacate the dismissal of Lopez's FOIA claims and remand to the district court for further proceedings.

## IV.  CONCLUSION

In sum, and for the reasons stated, we affirm the dismissal of Lopez's claims under *Bivens*, the FTCA, and the APA.  We vacate the dismissal of Lopez's FOIA claims and remand for further proceedings consistent with this opinion.

**AFFIRMED, IN PART; VACATED AND REMANDED, IN PART.**